[Nos. 14718–8–I; 14762–5–I; 14610–6–I.   Division One.   July 23, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES M. HODGSON, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. DENNIS FIED, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN T. BEHRLE, *Appellant*.

*Raymond H. Thoenig* and *Dori Jones* of *Washington Appellate Defender Association,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Michael Schwartz* and *Jeffrey Baird, Deputies,* for respondent.

COLEMAN, J.—Appellants James Hodgson, Dennis Fied, and Brian Behrle appeal their multiple convictions for first degree statutory rape, second degree statutory rape, and indecent liberties. We affirm in part and reverse in part.

Because the factual and legal issues raised in these three appeals overlap, it is preferable, in the interest of judicial economy, to consolidate the cases for purposes of our opinion. Also, since the appeals involve numerous challenges to the sufficiency of the evidence supporting the various counts and convictions, the facts will be set forth in greater detail in our evaluations of the issues.

### SUMMARY OF FACTS

During the late 1970's and early 1980's, appellants Behrle, Fied, and Hodgson lived on Vashon Island in the Wesleyan church community. Though the record is somewhat unclear, it appears that in 1983 the community became aware of sexual activities between appellants and certain children in the community. In March of that year, the adult community members held a meeting and decided to contact the police. The adults also contacted appellants Behrle and Fied and told them they could no longer visit the community except to make their peace and admit guilt. Appellant Hodgson had already been expelled from the community in January 1983.

On March 28, 1983, community members contacted the sex crimes unit of the King County police. Detective Spence Nelson subsequently went out to the community and commenced an investigation to determine the extent and duration of the alleged sexual abuse of children.

On October 14, 1983, the State charged Brian Behrle by amended information with 11 counts of statutory rape in

the first degree, 3 counts of statutory rape in the second degree, and 2 counts of indecent liberties. Dennis Fied was charged by amended information with 11 counts of statutory rape in the first degree, 3 counts of statutory rape in the second degree, and 2 counts of indecent liberties. James Hodgson was charged with 7 counts of statutory rape in the first degree, 2 counts of statutory rape in the second degree, and 1 count of indecent liberties.

On December 21, 1983, the court held a hearing on appellant Hodgson's motion to suppress a statement made to Detective Nelson. The court denied the motion, and the matter came on for bench trial on January 10, 1984.

The testimony at trial generally established a long history of sexual abuse of children by appellants. Several children testified that they were sexually abused by either Behrle, Fied, or Hodgson prior to arriving in the Wesleyan community. Nearly all of the children testified that they were repeatedly abused by one or more of the appellants during the late 1970's and early 1980's. The children generally suffered the same types of abuse, including various types of sexual contact, oral/genital intercourse, penile/anal intercourse, penile/vaginal intercourse, digital/vaginal intercourse, and object/vaginal intercourse.

The court found appellant Fied guilty of 9 counts of statutory rape in the first degree, 3 counts of statutory rape in the second degree, and 2 counts of indecent liberties. The court found appellant Behrle guilty of 9 counts of statutory rape in the first degree, 2 counts of statutory rape in the second degree, and 2 counts of indecent liberties. The court found appellant Hodgson guilty of 4 counts of first degree statutory rape, 2 counts of second degree statutory rape, and 1 count of indecent liberties. This appeal followed.

## EQUAL PROTECTION/GENERAL AND SPECIAL STATUTES

Appellants first contend they were denied equal protection of the law because (1) the statutes relating to statutory

rape,[1] indecent liberties,[2] and incest,[3] are "concurrent"; (2) the incest statute is more specific than the others; (3) equal protection is violated if a general statute is charged instead

[1] RCW 9A.44.070 provides: "Statutory rape in the first degree. (1) A person over thirteen years of age is guilty of statutory rape in the first degree when the person engages in sexual intercourse with another person who is less than eleven years old.

"(2) Statutory rape in the first degree is a class A felony. No person convicted of statutory rape in the first degree shall be granted a deferred or suspended sentence except for the purpose of commitment to an inpatient treatment facility."

RCW 9A.44.080 provides: "Statutory Rape in the second degree. (1) A person over sixteen years of age is guilty of statutory rape in the second degree when such person engages in sexual intercourse with another person, not married to the perpetrator, who is eleven years of age or older but less than fourteen years old.

"(2) Statutory rape in the second degree is a class B felony."

RCW 9A.44.090 provides: "Statutory rape in the third degree. (1) A person over eighteen years of age is guilty of statutory rape in the third degree when such person engages in sexual intercourse with another person, not married to the perpetrator, who is fourteen years of age or older but less than sixteen years old.

"(2) Statutory rape in the third degree is a class C felony."

[2] Former RCW 9A.44.100 provides: "Indecent liberties. (1) A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

"(a) By forcible compulsion; or

"(b) When the other person is less that fourteen years of age; or

"(c) When the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless.

"(2) For purposes of this section, 'sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party.

"(3) Indecent liberties is a class B felony."

[3] Former RCW 9A.64.020 provides: "Incest. (1) A person is guilty of incest in the first degree if he engages in sexual intercourse with a person whom he knows to be related to him, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood.

"(2) A person is guilty of incest in the second degree if he engages in sexual contact with a person whom he knows to be related to him, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood.

"(3) As used in this section, 'descendant' includes stepchildren and adopted children under eighteen years of age.

"(4) As used in this section, 'sexual contact' has the same meaning as in RCW 9A.44.100(2).

"(5) Incest in the first degree is a class B felony.

"(6) Incest in the second degree is a class C felony."

of a more specific statute; and (4) since the State charged appellants with statutory rape and indecent liberties instead of incest, their right to equal protection of the laws was violated.

■■ For purposes of equal protection, two statutes are "concurrent"..only if the general statute will be violated in each instance where the special statute has been violated. *State v. Shriner*, 101 Wn.2d 576, 580, 681 P.2d 237 (1984). Thus, this court must determine whether a violation of the incest statute will always constitute a violation of either the indecent liberties statute or the statutory rape statute.

With respect to the indecent liberties statute, Division Three of this court recently held that "incest is not a special statute which supersedes indecent liberties." *State v. Farrington*, 35 Wn. App. 799, 803, 669 P.2d 1275 (1983), *review denied*, 100 Wn.2d 1036 (1984). The *Farrington* court stated:

> For Mr. Farrington's equal protection claim to have merit, incest and indecent liberties must have identical elements and a violation of the incest statute must necessarily violate the indecent liberties statute. The elements of the two crimes are not identical. Incest requires proof of sexual intercourse, while indecent liberties requires proof only of sexual contact. Of the three possible ways of committing indecent liberties, two require proof of lack of consent. Consent is not an issue in an incest charge. *State v. Coffey*, 8 Wn.2d 504, 112 P.2d 989 (1941). Moreover, it is possible to commit the crime of incest without committing the crime of indecent liberties. For example, a defendant could engage in consensual sexual intercourse with his adult sister and violate the incest statute, but not the indecent liberties statute. Thus, we hold incest is not a special statute which supersedes indecent liberties.

(Footnote omitted.) *Farrington*, at 802–03. However, it should be noted that the incest statute was amended in 1982 to include a second degree incest charge based only on "sexual contact." Though the *Farrington* court based its holding on the former incest statute, the crucial distinctions noted by the court are still valid under the amended stat-

ute. Moreover, a comparison of the new second degree incest section and the indecent liberties statute shows that a violation of the former does not necessarily violate the latter. Commission of second degree incest does not necessarily violate subsections (a) and (c) of the indecent liberties statute because the latter require lack of consent. Likewise, commission of second degree incest does not necessarily violate subsection (b) of the indecent liberties statute because the latter requires that the victim be under 14 years of age. Thus, the incest statute, as amended, is not a special statute which supersedes indecent liberties.

With respect to statutory rape, a comparison of the incest statute and the statutory rape statutes shows that those statutes are not concurrent. Violation of the second degree incest statute does not necessarily violate the statutory rape statutes because the three degrees of statutory rape[4] all require sexual intercourse, while second degree incest only requires sexual contact. Also, first degree incest, which requires sexual intercourse, may be committed without committing statutory rape. For example, an adult defendant could engage in sexual intercourse with his or her adult sibling and violate the incest statute, but not the statutory rape statutes. Thus, the incest statute is not a special statute which supersedes the statutory rape statutes.

The above analysis also disposes of appellants' argument that the prosecutor in this case had discretion to seek varying degrees of punishment by proof of identical criminal elements. Though prosecutorial discretion to seek varying punishments when proving identical elements does violate equal protection, *State v. Danforth,* 97 Wn.2d 255, 643 P.2d 882 (1982), the previous analysis demonstrates that the elements of the crimes at issue are not identical, and the prosecutor's discretion is controlled by the different proof requirements contained in the statutes. *See Farrington,* at 801–03.

---

[4]RCW 9A.44.040, .050, and .060.

LESSER INCLUDED OFFENSE

■■ Under Washington law, in order for a particular offense to be a lesser included offense, "each of the elements of the lesser offense must be a necessary element of the offense charged." *State v. Parker,* 102 Wn.2d 161, 164, 683 P.2d 189 (1984) (quoting *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978)); *State v. Partosa,* 41 Wn. App. 266, 269, 703 P.2d 1070, *review denied,* 104 Wn.2d 1017 (1985). Appellants argue that indecent liberties is not a lesser included offense of statutory rape in the first degree. They contend that in order to prove the crime of indecent liberties, the State must prove an element which is not a necessary element of *first degree* statutory rape; *i.e.,* that the perpetrator was not married to the victim.

The State argues, however, that while the nonmarriage element is not expressly set forth in the first degree statutory rape statute, it is logically implicit in the statute's requirements. The State points out that the first degree statutory rape statute requires that the victim be less than 11 years of age. Therefore, since RCW 26.04.010 provides that a marriage between two people under 17 years of age is void, the State contends that the Legislature omitted the nonmarriage element because it was obvious that a person under 11 years of age could not be legally married. This argument is not persuasive.

The State overlooks the fact that RCW 26.04.010 allows for marriage under the age of 17 when the age requirement "has been waived by a superior court judge . . . on a showing of necessity." Therefore, nonmarriage is not an element implicit in first degree statutory rape. Furthermore, the fact that the Legislature requires proof of nonmarriage in second (victim 11 to 13 years old) and third (victim 14 to 15 years old) degree statutory rape indicates a legislative recognition that victims under 17 may be married, presumably by virtue of the waiver language in RCW 26.04.010. This suggests that the Legislature, as a matter of policy, decided that intercourse with a victim under 11 constitutes statutory rape regardless of whether the perpetrator and the

victim are married. Thus, our reading of the statutes indicates that statutory rape in the first degree does not contain one of the elements of indecent liberties. Since the element of nonmarriage in the lesser offense is not a necessary element of the offense charged, we conclude that indecent liberties is not a lesser included offense of statutory rape in the first degree. Consequently, we reverse all three appellants' convictions for indecent liberties as specified in conclusion of law 11.

## STATUTE OF LIMITATION

We next address appellants' contention that certain counts are barred by the statute of limitation.[5] The original information in the present case was filed on August 25, 1983. At that time, the statute relating to limitation of actions in criminal cases provided:

> Prosecutions for the offenses of murder, and arson where death ensues, may be commenced at any period after the commission of the offense; for offenses the punishment of which may be imprisonment in a state correctional institution, committed by any public officer in connection with the duties of his office or constituting a breach of his public duty or a violation of his oath of office, and arson where death does not ensue, within ten years after their commission; *for violations of RCW 9A.44.070, 9A.44.080, and 9A.44.100(1)(b), within five years after their commission;* for all other offenses the punishment of which may be imprisonment in a state correctional institution, within three years after their commission; two years for gross misdemeanors; and for all other offenses, within one year after their commission: *Provided,* That any length of time during which the party charged was not usually and publicly resident within this state shall not be reckoned within the one, two, three, *five,* and ten years respectively: *And further provided,* That where an indictment has been found, or complaint or an information filed, within the time lim-

---

[5]The appellants did not raise the statute of limitation argument at trial. However, we will consider the issue since the statute of limitation is jurisdictional and may be raised for the first time on appeal. *State v. Ansell,* 36 Wn. App. 492, 675 P.2d 614 (1984); RAP 2.5(a).

ited for the commencement of a criminal action, if the indictment, complaint or information be set aside, the time of limitation shall be extended by the length of time from the time of filing of such indictment, complaint, or information, to the time such indictment, complaint, or information was set aside.

(Italics ours.) Former RCW 9A.04.080. The italicized portions were added by the Legislature in the 1982 regular session and became effective on June 10, 1982. Laws of 1982, ch. 129, § 1.[6]

The information alleged acts occurring within lengthy charging periods. In certain counts, the State used charging periods which extended back more than 3 years before the filing of the information. None of the charging periods, however, extended back more than 5 years before the filing of the information. We must determine whether the 5–year statute of limitation (enacted after appellants' acts began but before the prosecution was barred under the 3–year statute) applies to this action. If the 5–year statute of limitation does not apply, then the earlier 3–year catchall limitation is applicable and prosecution on several of the counts would be barred.

Our inquiry on this issue focuses on two questions. First, we must determine whether the Legislature intended to apply the 5–year statute of limitation retroactively to acts committed before it was enacted. Second, if we determine that the 5–year statute was intended to apply retroactively, we must determine whether applying it would violate the prohibitions against ex post facto laws.[7]

---

[6]The Legislature amended the statute again in 1985 to provide for a 7–year limitation on violations of RCW 9A.44.070, .080, and .100(1)(b).

[7]Article 1, section 10 of the United States Constitution provides in part:

"Restrictions Upon Powers of States. No state shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make any thing but gold and silver coin a tender in payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility."

Article 1, section 23 of the Washington State Constitution provides:

"Bill of Attainder, Ex Post Facto Law, etc. No bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed."

Statutes are presumed to operate prospectively unless the Legislature provides otherwise. *Miebach v. Colasurdo,* 102 Wn.2d 170, 180–81, 685 P.2d 1074 (1984). This presumption is reversed, however, where a statute relates to practice, procedure, or remedies and does not affect a substantive or vested right. *Johnston v. Beneficial Management Corp. of Am.,* 85 Wn.2d 637, 641, 538 P.2d 510 (1975). The parties have not cited language in the statute or the legislative history which expressly indicates that the Legislature intended to apply the 5–year statute of limitation retroactively. We must therefore determine whether the general presumption of retroactivity of procedural statutes applies to a criminal statute of limitation.

We note first that there is a split of authority on this issue in other jurisdictions. Some courts hold that procedural amendments to criminal statutes apply retroactively. *State v. Norton,* 675 P.2d 577 (Utah 1983), *cert. denied,* 466 U.S. 942, 80 L. Ed. 2d 470, 104 S. Ct. 1923 (1984). Other jurisdictions hold that because penal statutes are strictly construed in favor of the accused, amendments to criminal statutes of limitation should not be presumed to operate retroactively. *United States v. Richardson,* 393 F. Supp. 83 (W.D. Pa. 1974), *aff'd,* 512 F.2d 105 (3d Cir. 1975); *State v. Merolla,* 100 Nev. 461, 686 P.2d 244 (1984); *State v. Paradise,* 189 Conn. 346, 456 A.2d 305 (1983).

We believe that it is more important to examine the rationale behind the rule of strict construction than to apply it rotely. Penal statutes are strictly construed because it is unjust to convict a person without clear notice to him that (1) his contemplated conduct is unlawful, and (2) certain penalties will attach to that conduct. *Commonwealth v. Broughton,* 257 Pa. Super. 369, 390 A.2d 1282, 1286 (1978). *See also* 3 C. Sands, *Statutory Construction* § 59.03, at 7 (4th ed. 1974). In the present case, the amendment to the statute of limitation affected neither the definition of the crime nor the penalty for it. The Legislature merely provided a longer period to prosecute acts for which the consequences were already known. Therefore, we find

no reason to use the rule of strict construction to override our general rule that a procedural statute is presumed to operate retroactively. We hold that the 5–year statute of limitation applies to the prosecution of appellants.

Furthermore, we find that there is no ex post facto violation in applying the 5–year statute of limitation. The Washington Supreme Court recently addressed this issue in *State v. Edwards,* 104 Wn.2d 63, 701 P.2d 508 (1985). The court found that a law violates the ex post facto prohibition of both the United States and the Washington Constitutions if it

aggravates a crime or makes it greater than it was when committed; permits imposition of a different or more severe punishment than was permissible when the crime was committed; or, changes the legal rules to permit less or different testimony to convict the offender than was required when the crime was committed.

*Edwards,* at 70–71; *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L. Ed. 648 (1798). Even if a change is procedural, it violates the ex post facto prohibition if it affects a substantial right of the defendant. *Edwards,* at 71; *Seattle v. Hesler,* 98 Wn.2d 73, 82, 653 P.2d 631 (1982). A statute will be found to be ex post facto if it changes legal consequences of acts completed before its effective date. *Weaver v. Graham,* 450 U.S. 24, 31, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981); *Edwards,* at 71.

The change in the limitation period in the present case passes the *Edwards* criteria; lengthening the limitation period before the prosecution is barred does not aggravate the crime, increase the punishment, or allow the offender to be convicted under legal rules permitting different testimony. Courts uniformly hold that extending the statute of limitation before a prosecution is barred is not ex post facto. *See, e.g., United States ex rel. Massarella v. Elrod,* 682 F.2d 688 (7th Cir. 1982); *Clements v. United States,* 266 F.2d 397 (9th Cir. 1959), *cert. denied,* 359 U.S. 985, 3 L. Ed. 2d 934, 79 S. Ct. 943 (1959); *Falter v. United States,* 23 F.2d 420 (2d Cir. 1928); *Vasquez v. State,* 557 S.W.2d

779 (Tex. Crim. App. 1977); *People v. Pfitzmayer,* 72 Misc. 2d 739, 340 N.Y.S.2d 85 (1972). As stated by Judge Learned Hand:

> Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it.

*Falter,* at 425–26. We hold that applying the 5–year statute of limitation to the acts charged does not present an ex post facto problem. Since all of the acts charged fell within the 5–year statute of limitation, they were not barred.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

WEBSTER, J., and JOHNSEN, J. Pro Tem., concur.

Reconsideration denied September 2, 1986.

Review granted by Supreme Court December 2, 1986.