IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37345-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACOB M. DUENAS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Raising multiple challenges, Michael Duenas appeals from five

convictions for sexual offenses against a child, T.M. We affirm the convictions and

remand to strike the criminal filing fee.

FACTS

During the summer of 2000, T.M., then an eight-year-old, traveled from California

to visit his grandfather in Gig Harbor for two or three weeks. Also staying there that

summer were the child's older cousin, Bryan Friebel, and Jacob Duenas, a son of the

grandfather's wife.  Friebel attended firefighting school and Duenas was attending college.  T.M. was sexually abused on repeated occasions during the visit.

T.M. disclosed the abuse to his older brother, K.M., three or four years later.  He identified the abuser as the person staying at his grandfather's house who wanted to be a police officer.  Duenas was studying criminal justice at Crown College in 2000-2001; he moved back to California in the fall of 2001 and eventually joined the California Highway Patrol.

Although T.M. did not want to report the matter, the abuse eventually was brought to the attention of Washington authorities following an investigation in California.  Charges were filed against Duenas and the case proceeded to jury trial in the Pierce County Superior Court.  Over objection, K.M. repeated his sibling's disclosure conversation for the jury.

The trial court prohibited the defense from asking Friebel about the student uniform he wore while in school and from arguing that Friebel was the abuser.  Mr. Duenas testified in his own behalf, telling jurors that he was in Gig Harbor for school before returning to California in 2001.  He denied abusing T.M. and told jurors that his interest in law enforcement did not develop until after 9/11.  In closing, the prosecutor argued that Duenas lied to the jury about when he desired to become an officer in order to distance himself from T.M.'s childhood description of the abuser as the person studying to be a police officer.

The jury convicted Mr. Duenas of two counts of first degree child rape, two counts of first degree child molestation, and one count of attempted first degree child rape. Although defense counsel asked the court for a bottom of the standard range sentence, the court imposed concurrent high end sentences.

Mr. Duenas timely appealed.  This case was administratively transferred to Division Three.  A panel then considered the appeal without conducting oral argument.

ANALYSIS

Mr. Duenas raises seven arguments; we address six of them.[1]  In order, we consider his contentions: (1) the statute of limitations barred the attempted rape charge, (2) the exclusion of other suspects evidence, (3) prosecutorial misconduct, (4) disclosure to K.M., (5) imposition of criminal filing fee, and (6) counsel's performance at sentencing.

*Statute of Limitations*

The initial contention is a claim that the attempted child rape conviction was untimely filed.  His own testimony defeats the argument.

This court has stated that the statute of limitations period can be argued for the first time on appeal.  *State v. Novotny*, 76 Wn. App. 343, 345 n.1, 884 P.2d 1336 (1994),

---

[1] In the absence of multiple errors, we do not address his cumulative error claim.

3

*abrogated in part by In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 353, 5 P.3d 1240 (2000). That particular statement was based on a theory of jurisdiction that subsequently was rejected by *Peltier*. Since the State does not contest Mr. Duenas's ability to raise this issue, we will consider it.

However, like many arguments raised for the first time on appeal, there must still be an adequate record to permit review of the issue. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). In the event of an inadequate record or the need to develop additional evidence, a personal restraint petition (PRP) is the appropriate vehicle for raising an argument that was not presented to the trial court. *Id*. at 338.[2]

The parties debate which statute of limitations applies to an *attempted* child rape. For felony charges not otherwise specified, the three year limitations period of RCW 9A.04.080(1)(i) applies. Since 2000, various extended time periods have governed the time for filing child rape and child molestation charges. *See* Former RCW 9A.04.080(1)(c) (1998); former RCW 9A.04.080(1)(c) (2009); former RCW 9A.04.080(1)(c) (2017). There currently is no statute of limitations on those offenses. *See* LAWS OF 2019, ch. 87, §2.

---

[2] Because an appellate ruling on the merits of an argument will often foreclose review of the issue in a PRP, an appellant is not well served raising an issue on appeal that is not fully developed. *In re Pers. Restraint of Taylor*, 105 Wn.2d 683, 688, 717 P.2d 755 (1986). However, we leave the wisdom of raising issues on appeal to appellate counsel and will assume that they will not raise claims better brought in a PRP.

However, the statute does not expressly list attempted crimes. That omission is the basis for appellant's argument and the State's rejoinder. We need not resolve that dispute because the defendant's own testimony establishes it is unnecessary.

The exception to the statutory limitations period is found in RCW 9A.04.080(2):

The periods of limitation prescribed in subsection (1) of this section do not run during any time when the person charged is not *usually and publicly resident within this state*.

(Emphasis added.)

Assuming that the crime of attempted child rape is subject to a three year limitations period, the argument fails here. Mr. Duenas and the family members testified that he left Washington in the fall of 2001 and returned to California. He completed law enforcement training in California, joined the California Highway Patrol in 2003, and was living in that state at the time the crimes were divulged to law enforcement more than a decade later. There is no evidence that he ever resided in Washington after leaving Gig Harbor in 2001.

On this record, the statute of limitations argument must fail. If he has evidence that he later resided publicly in Washington, he must bring it in a PRP. *McFarland*, 127 Wn.2d at 338; *In re Pers. Restraint of Taylor*, 105 Wn.2d 683, 688, 717 P.2d 755 (1986).

*Other Suspects Evidence*

Mr. Duenas next argues that his constitutional right to counsel and his right to present a defense were violated when the court (1) excluded evidence that Mr. Friebel

5

wore a blue uniform while attending firefighting school and (2) prohibited him from arguing that Friebel committed the crimes. The trial court did not err.

The federal and state constitutions guarantee a defendant the opportunity to present a defense to the crime charged. *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State v. Thomas*, 150 Wn.2d 821, 857, 83 P.3d 970 (2004). The party seeking admission of evidence bears the burden of establishing relevance and materiality. *State v. Pacheco*, 107 Wn.2d 59, 67, 726 P.2d 981 (1986). In establishing a foundation for admission of "other suspects" evidence, the defendant must show a clear nexus between the other person and the crime. *State v. Rafay*, 168 Wn. App. 734, 800, 285 P.3d 83 (2012), *review denied*, 176 Wn.2d 1023, *cert. denied*, 134 S. Ct. 170 (2013).

The trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *State v. Franklin*, 180 Wn.2d 371, 377 n.2, 325 P.3d 159 (2014). Discretion is abused if it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). "An erroneous evidentiary ruling that violates the defendant's constitutional rights, however, is presumed prejudicial unless the State can show the error was harmless beyond a reasonable doubt." *Franklin*, 180 Wn.2d at 377 n.2. However, a defendant does not have a constitutional right to present irrelevant or inadmissible evidence. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010); *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983).

A trial court's exclusion of "other suspects" evidence is an application of the general evidentiary rule that excludes evidence if its probative value is outweighed by such factors as unfair prejudice, confusion of the issues, or potential to mislead the jury. *Franklin*, 180 Wn.2d at 378 (citing *Holmes v. South Carolina*, 547 U.S. 319, 326-27, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006)). Before the trial court will admit "other suspects" evidence, the defendant must present a combination of facts or circumstances that points to a nonspeculative link between the other suspect and the crime. *Franklin*, 180 Wn.2d at 381. The standard for the relevance of such evidence is whether it tends to connect someone other than the defendant with the charged crime. *Id.*

The blue uniform evidence did not satisfy the standard. The purpose of the testimony was to attempt to impeach T.M.'s in-court identification of Duenas as the abuser. As a child, the boy had identified the abuser as the person who was studying to be a cop. He did not state that the abuser wore a blue uniform. The attempted impeachment did not constitute evidence that Friebel was the abuser. Accordingly, it was not "other suspects" evidence. The trial court had a tenable basis for excluding the evidence. There was no abuse of discretion.

Similarly, the court did not err in prohibiting Duenas from arguing that Friebel was the abuser. There was no evidence that he committed the crimes. Duenas was properly allowed to argue that others were in the house and that T.M. may have been

mistaken in his identification. However, he lacked evidence that Friebel did abuse the child. The court had a tenable basis for prohibiting the argument.

The court did not err in its treatment of the other suspects evidence.

*Prosecutorial Misconduct*

Appellant next argues that the prosecutor engaged in misconduct by telling the jury that Duenas lied about when he decided to enter into law enforcement. The prosecutor clearly tied that statement to the evidence and did not engage in misconduct.

Familiar standards guide our review of this issue. The appellant bears the burden of demonstrating prosecutorial misconduct on appeal and must establish that the conduct was both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). Prejudice occurs where there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 718-719. The allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

Reversal is not required where the alleged error could have been obviated by a curative instruction. *State v. Gentry*, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). The failure to object constitutes a waiver unless the remark was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Id.*; *State v. Swan*, 114 Wn.2d 613, 665, 790 P.2d 610

(1990); *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988).  Finally, a

prosecutor has "wide latitude" in arguing inferences from the evidence presented.

*Stenson*, 132 Wn.2d at 727.

In closing, the prosecutor argued that Mr. Duenas had a strong motive to lie about

the timing of his choice to enter into law enforcement:

> So what are the two things that he distanced himself from this
> morning?  Identity and opportunity.  He knew that because [T.M.] was not
> able to provide a name for his disclosure, he identified him as the guy who
> wanted to be a law enforcement officer.  Jacob Duenas is smart enough to
> know that he needs to distance himself from that.  So he took the stand and
> he lied.

Report of Proceedings at 594-595.  For several pages leading up to this statement, and

again afterward, the prosecutor noted all of the witnesses who had stated Duenas desired

to go into law enforcement prior to 9/11.  She focused on that testimony and asked the

jurors to conclude that Duenas was lying about the timing.  This was not a statement of

personal opinion; the prosecutor was arguing an inference from the conflicting testimony.

Mr. Duenas also argues that the prosecutor erred in misstating the burden of proof

and in appealing to the jury's passions.  Neither argument has merit.

The prosecutor told the jurors that T.M. was either making up the story, was

mistaken about the identity of the abuser, or was telling the truth.  She then went through

the evidence and explained why it supported T.M.'s testimony.  This was not an instance

of the prosecutor giving the jury a "false choice" between either believing the victim or

9

acquiting the defendant. Rather, she listed the possible explanations and then discussed why only one of those options was supported by the evidence.

Finally, Mr. Duenas argues that the prosecutor appealed to the emotions of the jury when she repeated some of the victim's testimony. Again, this was done in the context of explaining why T.M. should be believed—he discussed difficult topics that cost him emotionally. Those were not the type of statements one would expect to hear if the victim were creating a false narrative. He had a difficult time talking about the abuse and how it impacted him. The jury could properly weigh the sincerity of T.M.'s testimony in reaching its decision.

Appellant has not established that the prosecutor engaged in misconduct in closing argument.

*Disclosure to K.M.*

Mr. Duenas next argues that the court erred in allowing K.M. to repeat his brother's description of the sexual abuse as an excited utterance. We agree, but conclude that the error was harmless.

Trial court judges have great discretion with respect to the admission of evidence and will be overturned only for manifest abuse of that discretion. *State v. Luvene*, 127 Wn.2d 690, 706-707, 903 P.2d 960 (1995). The trial court erred in applying the test for admitting an excited utterance.

ER 803(a)(2) provides that any statement "describing or explaining an event or condition" is admissible hearsay if it was "made while the declarant was under the stress of excitement caused by the event or condition." *Id.* The requirements of this exception were discussed in *State v. Woods*, 143 Wn.2d 561, 597, 23 P.3d 1046, *cert. denied*, 534 U.S. 964 (2001):

> An out-of-court statement offered to prove the truth of the matter asserted is admissible at trial if the statement relates to "a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). We have previously stated that three closely connected requirements must be satisfied in order for a hearsay statement to qualify as an excited utterance. First, a startling event or condition must have occurred. Second, the statement must have been made while the declarant was under the stress or excitement caused by the startling event or condition. Third, the statement must relate to the startling event or condition. [*State v.*] *Chapin*, 118 Wn.2d [681], 686, [826 P.2d 194 (1992)]. Often, the key determination is whether the statement was made while the declarant was still under the influence of the event to the extent that the statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment. *State v. Strauss*, 119 Wn.2d 401, 416, 832 P.2d 78 (1992).

An excited utterance is admissible because it is "believed to be 'a spontaneous and sincere response to the actual sensations and perceptions already produced by [an] external shock.'" *Chapin*, 118 Wn.2d at 686 (quoting 6 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1747, at 195 (James H. Chadbourn rev. ed. 1976)). As noted above, an excited utterance has three requirements: (1) a startling event or condition occurred, (2) the declarant made a statement that relates to the startling

11

event, and (3) the declarant made the statement while still under the stress of excitement caused by the event. ER 803(a)(2); *Woods*, 143 Wn.2d at 597.

The disclosure in this case came three to four years after the abuse. That is well after the stress of the abuse had passed. Although the mere passage of time does not necessarily prevent a finding of continuing influence, the timing of the statement is still key. In other cases where statements have been determined to be timely, the disclosure had come within hours, not years, of the exciting event: *State v. Thomas*, 46 Wn. App. 280, 284, 730 P.2d 117 (1986), *aff'd*, 110 Wn.2d 859, 757 P.2d 512 (1988) (victim still under influence six to seven hours after rape); *State v. Flett*, 40 Wn. App. 277, 287, 699 P.2d 774 (1985) (victim still under influence of event when reporting rape seven hours after occurrence); *State v. Woodward*, 32 Wn. App. 204, 206-207, 646 P.2d 135 (1982) (report 20 hours after rape); *State v. Fleming*, 27 Wn. App. 952, 956, 621 P.2d 779 (1980) (three to four hours after rape).

The disclosure in this case came much longer after the event than the time periods noted in the earlier cases. This case is far closer to the facts in *State v. Ramirez-Estevez*, 164 Wn. App. 284, 263 P.3d 1257 (2011). There the victim made disclosures to a family member and a counselor two to three years after the event. This court concluded that too much time had passed for the victim to still be under the stress of the original attack.

Accordingly, we conclude that the court erred in admitting the statements as excited utterances. Nonetheless, the error was harmless. Evidentiary error is harmless if,

12

within reasonable probability, it did not materially affect the verdict. *State v. Zwicker*, 105 Wn.2d 228, 243, 713 P.2d 1101 (1986). The testimony was similar to that T.M. recited to the jury. Generally speaking, the improper admission of cumulative evidence does not constitute reversible error. *State v. Todd*, 78 Wn.2d 362, 372, 474 P.2d 542 (1970). At worst, that is what happened here.[3]

The erroneous testimony did not materially impact the verdict. The error was harmless.

*Criminal Filing Fee*

Mr. Duenas next argues, and the State concedes, that the court erroneously imposed the $200 filing fee after finding him indigent. After the sentencing here, the legislature amended the statutes governing imposition of financial obligations on criminal defendants. In *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), the Washington Supreme Court ruled that the amendments were retroactive and applied to all sentencings that were not final on the effective date of the new legislation, June 7, 2018. LAWS OF 2018, ch. 269.

We accept the concession of error and remand for the trial court to strike the criminal filing fee.

---

[3] Some of the identity testimony appears to have been admissible in response to the cross-examination of T.M. We need not parse the testimony to determine what was admitted in error and what was not.

*Sentencing Hearing*

Lastly, Mr. Duenas argues that his defense counsel erred in not arguing his youth as a mitigating factor. There is no factual support in the record for this argument.

We also consider this issue in accordance with well settled law. Counsel's failure to live up to the standards of the profession will require a new trial when the client has been prejudiced by counsel's failure. *McFarland*, 127 Wn.2d at 334-335. Review is highly deferential and we engage in the presumption that counsel was competent; moreover, counsel's strategic or tactical choices are not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, courts apply a two-prong test: whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Id.* at 690-692. When a claim can be resolved on one ground, a reviewing court need not consider both *Strickland* prongs. *Id.* at 697.

An exceptional sentence may be imposed if the trial court finds "substantial and compelling" reasons to go outside the standard range. RCW 9.94A.535. The trial court must enter written findings of fact and conclusions of law if it does impose an exceptional sentence. *Id.* A nonexclusive list of mitigating factors is recognized by statute. RCW 9.94A.535(1).

The Washington Supreme Court has recognized that all youthful offenders sentenced in adult court must be able to seek exceptional sentences based on their

immaturity at the time of the commission of the crime. *State v. Houston-Sconiers*, 188 Wn.2d 1, 18-21, 391 P.3d 409 (2017); *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015). However, a youthful offender has no presumption or entitlement to a mitigated sentence. *State v. Gregg*, 9 Wn. App. 2d 569, 578-581, 444 P.3d 1219, *review granted*, 104 Wn.2d 1002, 451 P.3d 341 (2019). The defendant still bears the burden of establishing that mitigating circumstances exist. *Id*. at 574.

An exceptional sentence may be available to a youthful offender whose offense bears the hallmarks of youth—lack of maturity, impetuous or ill-considered actions and decisions, susceptibility to peer pressure, and transitory (rather than fixed) character traits. *Gregg*, 9 Wn. App. 2d at 574-575 (citing *Roper v. Simmons*, 543 U.S. 551, 569-570, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)). To receive a mitigated sentence, a defendant must demonstrate he is less culpable because of his age and immaturity. *State v. Moretti*, 193 Wn.2d 809, 824, 446 P.3d 609 (2019).

Here, Mr. Duenas was prosecuted in adult court for an offense committed while he was 19, making an exceptional sentence based on youthfulness possible. *Odell*, 183 Wn.2d 680. However, his argument fails because Mr. Duenas presented no evidence that he committed these offenses because of youthful character traits. Indeed, since Mr. Duenas denied committing the offense, it is exceptionally unlikely that he would have appealed for sentencing leniency by admitting that he perjured himself before the jury.

No. 37345-2-III
*State v. Duenas*

Understandably, there was no evidence in the record suggesting that youthful immaturity was a factor in this crime.

Counsel could not have erred by failing to pursue the youthfulness mitigating factor under the facts of this case. He did not perform ineffectively.

Affirmed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, C.J.

16